Filing # 69348828 E-Filed 03/15/2018 05:48:17 PM

## IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT
## IN AND FOR POLK COUNTY FLORIDA
## CIVIL CIRCUIT

HOUSSAIN KETTANI

     Plaintiff,       Case No.:

v.

FLORIDA POLYTECHNIC UNIVERSITY
     Defendant.
_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Dr. Houssain Kettani (hereinafter "Kettani") by and through his undersigned attorney, hereby file their Complaint against Defendant, Florida Polytechnic University. (hereinafter "Florida Polytechnic"), and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. This is an action for damages that are capable of proof in excess of $15,000.00 exclusive of interest and costs.

2. Plaintiff, Dr. Kettani, is a resident of Polk County, Florida.

3. Defendant, Florida Polytechnic, is a Florida corporation, with its principal place of business at 4700 Research Way, Lakeland, FL 33805. Florida Polytechnic conducts regular and substantial business in Lakeland, Florida. At all times Florida Polytechnic employed greater than 200 employees.

4. Venue of this action is proper in Polk County, Florida, pursuant to §§ 47.011 and 47.051 Florida Statutes, because Polk County is where the cause of action accrued.

5. This Court has subject matter jurisdiction over this action under § 47.011 Florida Statutes because it is in which the county Defendant resides and where the cause of action accrued.

1

6. This Court has personal jurisdiction under § 48.193, Florida Statutes.

7. Dr. Kettani reserves the right to amend this complaint.

### SATISFACTION OF CONDITIONS PRECEDENT

8. Dr. Kettani filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

9. On December 19, 2017, the EEOC notified Dr. Kettani of his right to sue within ninety days. This action was commenced within 90 days of the receipt.

### THE NATURE OF THIS ACTION

10. This is an action brought by Dr. Kettani, an Arab, Muslim employee, who was discriminated against at work because of his race and religion by Florida Polytechnic. When Dr. Kettani raised concerns of racial and religious discrimination issues on campus, his complaints were not given credence and his contract for employment was not renewed for the 2018-2019 academic year.

11. Florida Polytechnic has a history of treating Dr. Kettani discriminatorily and in so doing the administration at the university has hostile work environment fostering a culture of bullying and intimidation against Dr. Kettani with ethnic and religious overtones.

12. Florida Polytechnic's illegal conduct was designed and implemented to discriminate against Dr. Kettani based on his race and religion in violation of laws prohibiting discrimination in the workplace, including the Florida Civil Rights Act of 1992, Fla. Stat §760.01 et al.

13. Even when Dr. Kettani objected to the discrimination against him and raised concerns about activities believed to be illegal, Florida Polytechnic never took any legitimate steps to address or remedy the issue.

14. As a result of Florida Polytechnic's inaction, Dr. Kettani seeks damages and injunctive relief.

15. Dr. Kettani reserves the right to amend this complaint.

## GENERAL ALLEGATIONS

16. Dr. Kettani became an employee of Florida Polytechnic in 2016. During and at all times during Dr. Kettani's employment, he was a professor of Computer Sciences.

17. As part of Dr. Kettani's employment he participated in a search committee for additional professors. In that capacity he brought to the attention of the chair concerns about perceived discrimination against one female Muslim who wore the Hijab and her not being ushered in for the final steps of the selection process.

18. Shortly thereafter, on May 16, 2017, Tiffany Dvorske and Lauren Willson, who work for the Academic Success Center (ASC) and the Office of the Ombuds (OTO) respectively, at Florida Polytechnic sent a formal complaint against professor Dr. Kettani to the Provost, Dr. Terry Parker.

19. On May 18, 2017 Dvorske filed an incident report against Dr. Kettani, which she sent to the Provost and Kathryn Miller, the Director of the ASC. That same day, Dr. Kettani emailed the Provost a counterclaim he wanted filed against the ASC and the OTO.

20. At 10:39pm on May 22, 2017 Dr. Kettani received a harassing email from Dr. Matthew Bohm, an associate professor at Florida Polytechnic. The following day, May 23, 2017, Dr. Kettani forwarded the email to the Provost, raising concerns that he was being "vilified" and "falsely accused" as well as concerns that the current investigation into the allegations against him could be biased.

21. Later that same day, May 23, 2017, Dr. Kettani sent another email to the Provost, wherein he wrote, "we probably have some race issues on campus." The Provost replied that Dr. Kettani's concerns were "duly noted and will be added to the file."

2018CA-000865-0000-00        Received in Polk 03/15/2018 06:58 PM

22. On May 26, a detailed investigative report was sent to the Provost from Kevin Calkins, the Director of Institutional Research, and Jhojana Infante, the Assistant Director of Institutional Research. The report outlines each allegation leveled against Dr. Kettani, evidence such as the school policy and interviews with personnel, and subsequent conclusive findings and recommendations regarding the allegations.

23. On June 7, Dr. Kettani emailed the Provost raising concerns about being taken off the teaching schedule for the Fall 2017 semester against policy as well as concerns regarding receipt of a copy of his employment extension for 2019, which he had signed on May 17, 2017 but which needed to be corrected, as it had the wrong address listed.

24. Later that month, on June 21, and again on June 22, Dr. Kettani was denied an opportunity to attend a conference, the Provost's denial stating that Dr. Kettani's request was a veiled "budgetary move" in an effort to "use [his funding] or lose it" and that the request did not "appear to align well with [his] efforts to date at poly." Dr. Kettani attended the event on his own dime and fostered beneficial relationships with Florida high school educators, whom are now encouraging their high school students to look into applying to Florida Polytechnic University.

25. On July 11, the Provost sent a memo to Dr. Kettani that "significant events relevant to the complaints…necessitated a change to the original proposed process [of resolution]" and that "elements of the investigation findings are significant and therefore not appropriate for informal resolution." The memo goes on to put Dr. Kettani on notice that the complaints leveled against him will be considered by a panel of three faculty and one administrator.

4

26. In the same memo, the Provost details his personal "conclusion of findings" for each allegation against Dr. Kettani, as well as to raise concerns regarding incidents in which Dr. Kettani was involved in.

27. On July 21, the Provost emailed Dr. Kettani a memo stating on the cover page that the "complaint filed by Ms. Dvorske requires formal consideration" and that his employment extension contract "has not been forwarded to the President due to the seriousness of this matter." The memo then goes to outline the investigative findings of Mr. Rick Maxey into the counter-complaint filed by Dr. Kettani against the ASC and the OTO.

28. In a separate memo dated the same day, the Provost details his personal conclusions for each allegation Dr. Kettani leveled against the two offices named in his counter-complaint.

29. On August 13, the Provost sent Dr. Kettani a memo stating that "the panel has recommended…to not renew your employment contract with Florida Polytechnic University." The Provost then goes on to threaten that "any activity by you that can be considered retribution against any member of the Florida Polytechnic community will be handled as a separate incident any may result in immediate termination."

30. In late 2017, employee evaluations carried out by Florida Polytechnic revealed that Dr. Kettani was eligible for up to a 3% pay increase, but no such adjustment was made to his salary.

## COUNT I: DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964

31. Paragraphs 1 - 30 are incorporated by reference as if fully set forth herein.

32. Dr. Kettani, as an Arab, Muslim employee, belongs to a protected group within Title VII.

33. Precedent demands that a Plaintiff must show that he was a member of a protected class, and that either he did not violate the work rules, or that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against

5

him were more severe than those enforced against the other persons who engaged in similar misconduct. *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989).

34. The most important variables in showing a racially discriminatory bias in a disciplinary context are (1) the nature of the offenses committed, and (2) the nature of the punishments imposed. *Jones*, 874 F.2d at 1540.

35. Despite the May 26, 2017 internal investigation's findings that Dr. Kettani did not violate the work rules, or in so doing did not violate the work rules with the requisite intent needed to be found guilty of such a violation, Florida Polytechnic adversely acted to not extend Plaintiff's teaching contract, removed Plaintiff from the upcoming semester's teaching rotation for courses which he was pre-approved to teach, and denied Plaintiff funding for legitimate, school-related activities.

36. Prior to the filing of the complaint against Dr. Kettani, Florida Polytechnic had issued him a contract extension for the 2018-2019 academic school year, which Dr. Kettani signed in the presence of the Provost and returned. The contract was not returned to Dr. Kettani, nor did Florida Polytechnic honor the terms of the agreement.

37. Despite Dr. Kettani raising the issue of racial and religious discrimination on multiple occasions, Defendant took no legitimate steps to address or resolve the issue.

38. Following Dr. Kettani raising concerns about religiously offensive language used by the university's Provost in a search committee meeting in April 2017, Dr. Kettani was subsequently frozen out and vilified by the Florida Polytechnic's administration.

39. When the search committee, tasked with hiring new professors for the Computer Science Department, submitted recommendations to the administration, the only female, and visibly Muslim candidate, was dropped from the list of invitees to come interview on campus.

40. When Dr. Kettani inquired as to why the only female applicant was not seriously considered, pointing out that the current Computer Science Department only had one female faculty member on staff, no legitimate reason was given.

41. The original search committee was then dissolved and another committee with the same prerogative was convened, removing Dr. Kettani from having any influence in the hiring process despite being the senior most faculty member in the Computer Science Department and the only full-fledged professor in the entire department.

42. In May 2017, as retaliation for speaking up and expressing the need for religious sensitivity during the search committee process, a formal complaint was filed against Dr. Kettani, alleging several counts of academic integrity, containing but not limited to: plagiarism, purposely trying to fail students, illegitimately canceling classes, and making racially-tinged comments in class.

43. A subsequent internal investigation by the university itself found that in fact Dr. Kettani worked hard to help his students learn and master the materials presented in his class and no serious issues of academic integrity that were raised held merit.

44. However, the Provost's "conclusion of findings", outlined in the July 11 memo, regarding the allegations raised against Dr. Kettani had little to no factual predicate and ignored all evidence in the investigative report suggesting that Dr. Kettani acted in the best interest of his students.

45. The Provost's biased, personal conclusions were then submitted to the four-person convened panel, severely biasing any outcome against Dr. Kettani.

46. The panel was not provided with important information, including but not limited to: (1) various emails Dr. Kettani sent to the Provost regarding the complaints, defending himself

and raising counterfactuals, (2) the harassing email from Dr. Bohm that Dr. Kettani received, and (3) emails from the university's own general counsel encouraging Dr. Kettani to file discrimination and harassment complaints.

47. Defendant waited two months after receiving the original complaint and subsequent investigative report into the allegations against Dr. Kettani before ever seeking a formal resolution process and convening the panel. No legitimate reason was ever given for the lapse.

48. The internal investigation into Dr. Kettani's counter-complaints found that other parties, namely Dvorske who filed the original complaint against him, were guilty of: (1) lying, (2) procuring sensitive information against Dr. Kettani months before ever filing the official complaint, and (3) violating internal practices and norms of the university. Defendant took no adverse action against Dvorske or any other party except Dr. Kettani.

49. When Dvorske and Dr. Kettani both allegedly violated a prerogative not to discuss the complaint and resolution process with anyone involved, only Dr. Kettani was reprimanded.

50. When Dr. Kettani later applied for a newly created Director position in the Computer Science Department at Florida Polytechnic University, his rejection letter, which raised concerns into his academic integrity, was forwarded to a fellow applicant who had applied for the same position.

51. Despite the investigative report debunking most of the allegations against Dr. Kettani as inflated or false, following the filing of the complaint against him, nearly every interaction with the university's administration, namely with the Provost, involved repeatedly questioning Dr. Kettani's professional integrity as an educator and as a fellow faculty member.

2018CA-000865-0000-00        Received in Polk 03/15/2018 06:58 PM

### COUNT II: BREACH OF CONTRACT

52. Paragraphs 1 - 30 are incorporated by reference as if fully set forth herein.

53. Florida Polytechnic offered an employment extension to Dr. Kettani by transmitting a copy of an employment contract for the 2018-2019 academic year.

54. Upon affixing his signature to the contract extension, Dr. Kettani accepted the terms of Florida Polytechnic's employment contract, attached composite exhibit A.

55. The employment contract contained specific terms of employment and duties for each party to be preformed, and the contract was supported by consideration.

56. Florida Polytechnic materially breached the contract terms by failing to continue Dr. Kettani's employment at the university for the 2018-2019 academic school year.

57. WHEREFORE, Dr. Kettani demands judgment against Defendants for compensatory damages including but not limited to damages for pain and suffering, mental anguish, inconvenience and loss of dignity, punitive damages, and costs and attorneys' fees, all to the fullest extent permitted by law.

### DEMAND FOR JURY TRIAL

Plaintiff demand a jury trial in this matter.

Dated: March 15, 2018

By: /s/_____

TARK AOUADI, ESQ.
Florida Bar No. 0671223
E-mail: taouadi@cair.com
CAIR Florida, Inc.
1507 S. Hiawassee Road, Suite 212
Orlando, Florida 32835
Telephone: (407) 490-0407
Attorney for Plaintiff

9